YONGXIN CHEN, Petitioner,

v.

ATTORNEY GENERAL OF
the UNITED STATES,
Respondent.

No. 06–2461.

United States Court of Appeals,
Third Circuit.

Submitted Under Third Circuit
L.A.R. 34.1(a) Sept. 11, 2007.

Filed: Oct. 2, 2007.

Meer M.M. Rahman, New York, NY, for
Petitioner.

Richard M. Bernstein, Office of United
States Attorney, Philadelphia, PA, Richard
M. Evans, Joan E. Smiley, United States
Department of Justice, Office of Immigra-
tion Litigation, Washington, DC, for Re-
spondent.

Before: SCIRICA, Chief Judge,
RENDELL, and FUENTES, Circuit
Judges.

OPINION OF THE COURT

FUENTES, Circuit Judge:

Yongxin Chen petitions for review of a
decision by the Board of Immigration Ap-
peals ("BIA") affirming an Immigration
Judge's ("IJ") denial of his application for
asylum, withholding of removal, and pro-
tection under the Convention Against Tor-
ture ("Convention"). Because we find that
substantial evidence supports the findings
of the IJ and BIA, we will deny the peti-
tion.

## I. Facts

As we write for the parties, we recount only those facts necessary to the disposition of the case. Yongxin Chen, a native and citizen of China, was born on September 3, 1966, in the Fuzhou province. On April 2, 1993, Chen married Shaoying Lin, who gave birth to the couple's first child on May 2, 1995. Shortly thereafter, as a result of China's birth control policy, Lin had an intrauterine device inserted to prevent additional pregnancies. Notwithstanding this procedure, Lin became pregnant a second time in early 1996 and went into hiding so as to evade Chinese birth control officials. However, the officials became suspicious of Lin's absence and eventually detained her mother in an attempt to coerce Lin to submit for testing. In response to her mother's detention, Lin came out of hiding. Chen alleges that Lin was later forced to abort her second pregnancy. In addition to the forced abortion, the officials allegedly ordered Lin to undergo a sterilization, fined Chen, and destroyed Chen's home and furnishings. Lin and Chen fled China on August 25, 1996, and December 18, 1996, respectively, in order to avoid additional punishment and sterilization. (J.A. 488–90.)

In September 1997, after Chen arrived in the United States, Lin gave birth to a second child. In September 2002 Chen began practicing Falun Gong.

## II. Procedural History

Chen applied for asylum in December 2002. Chen's application was based on his fear that he would face forced sterilization because of China's birth control policy and persecution because of his practice of Falun Gong. (J.A. 559–562; Petr.'s Br. 5.) Following the filing of his asylum application, in February 2003, Chen was served with a Notice to Appear charging him with removal for entering the United States without a valid entry document. (J.A. 33.)

Chen conceded removability, but requested asylum, withholding of removal, or relief under the Convention. Chen's application for asylum was referred to the IJ who presided over the removal proceedings.

A hearing was held and on November 22, 2004, the IJ denied all relief and ordered Chen removed to China. The IJ found that Chen's asylum claim was barred because he failed to file his application within one year of arrival in the United States, as required by 8 U.S.C. § 1158(a)(2)(B). *See also* 8 C.F.R. § 1208.4(a)(2)(i)(A). The IJ denied Chen's request for a waiver of the one-year filing requirement because of changed circumstances. (J.A. 36.) The IJ also found that Chen had not demonstrated entitlement to withholding of removal or protection under the Convention, finding it unlikely that Chen would face harm should he return to China. The IJ premised this finding on a determination that the respondent's allegations regarding past persecution and his Falun Gong participation were not credible. Moreover, Chen failed to show that he would face harm as a result of the birth of his second child should he return to China.

The BIA dismissed Chen's appeal on April 7, 2006, after finding that the IJ had not committed clear error with respect to the aforementioned determinations. (J.A. 2–4.)

## III. Jurisdiction

The BIA's jurisdiction arose under 8 C.F.R. § 1003.1(b)(3) and (9). This Court has jurisdiction to review the BIA's final order of removal under 8 U.S.C. § 1252(a).

## IV. Standard of Review

"We review de novo the issue of whether we have jurisdiction to determine what constitutes [changed] circumstances for a

late filed asylum petition." *Tarrawally v. Ashcroft,* 338 F.3d 180, 184 (3d Cir.2003).

We review the IJ's or BIA's findings of fact to determine whether they are based on substantial evidence. "Under this deferential standard of review, we must uphold [a factual] determination of the BIA or IJ unless 'any reasonable adjudicator would be compelled to conclude to the contrary.'" *Chen v. Ashcroft,* 376 F.3d 215, 222 (3d Cir.2004) (quoting 8 U.S.C. 1252(b)(4)(B)). "Although we generally defer to the IJ's inferences, deference is not due where findings and conclusions are based on inferences or presumptions that are not reasonably grounded in the record, viewed as a whole." *Tarrawally,* 338 F.3d at 184.

We have "recognized that when the BIA both adopts the findings of the IJ and discusses some of the bases for the IJ's decision, we have authority to review the decisions of both the IJ and the BIA." *Chen,* 376 F.3d at 222 (citing *Xie v. Ashcroft,* 359 F.3d 239, 242 (3d Cir.2004)). In this case the BIA applied the clear error standard required by its regulations when reviewing the IJ's decision. (J.A. 3.) The BIA did not conduct a de novo review of the record to arrive independently at its conclusions. "Inasmuch as the BIA deferred to the IJ's [factual] determinations and adopted the reasons the IJ set forth, we have authority to review both determinations." *Chen,* 376 F.3d at 222.

## V. Legal Analysis

### A. Asylum

An alien must file an asylum application within one year of the date of the alien's arrival in the United States. 8 U.S.C. § 1158(a)(2)(B). A late-filed application may be considered if the alien demonstrates "changed circumstances which materially affect the applicant's eligibility for asylum or extraordinary circumstances re-lating to the delay in filing an application." 8 U.S.C. § 1158(a)(2)(D).

■ Chen entered the United States in 1996 but did not file an application for asylum until 2002. Therefore, the IJ determined that the asylum application was untimely. Moreover, the IJ found that Chen had failed to establish changed circumstances that would excuse the failure to file within one year, as required by 8 U.S.C. § 1158(a)(2)(D).

Chen challenges the IJ's determination that he did not qualify for an exception to the one-year filing deadline for asylum applications. In particular, Chen argues that the IJ did not properly consider Chen's practice of Falun Gong when determining whether there were changed circumstances warranting a waiver of the one-year filing requirement. (Petr.'s Br. 21–22.) The government, however, contends that pursuant to 8 U.S.C. § 1158(a)(3), this Court does not have jurisdiction to review the IJ's decision regarding the timeliness of the asylum application.

Section 1158(a)(3) explicitly prohibits this court from reviewing the discretionary determinations made under § 1158(a)(2): "No court shall have jurisdiction to review any determination of the Attorney General under paragraph (2)." 8 U.S.C. § 1158(a)(3). We have held that "the language of 8 U.S.C. § 1158(a)(3) clearly deprives us of jurisdiction to review an IJ's determination that an asylum petition was not filed within the one year limitations period, and that such period was not tolled by extraordinary circumstances." *Tarrawally,* 338 F.3d at 185; *see also Sukwanputra v. Gonzales,* 434 F.3d 627, 633–35 (3d Cir.2006) ("[D]espite the changes of the REAL ID Act, 8 U.S.C. § 1158(a)(3) continues to divest the court of appeals of jurisdiction to review a decision regarding whether an alien established changed or extraordinary circumstances that would

excuse his untimely filing."). Therefore, we conclude that "we lack jurisdiction to review the IJ's denial of [Chen's] asylum petition, based on the IJ's finding of untimeliness." *Tarrawally,* 338 F.3d at 185–86.

### B. Withholding of Removal

Chen's claim for withholding of removal is not subject to the time-bar imposed on asylum applications. The right to withholding of removal arises out of 8 U.S.C. § 1231(b)(3)(A), which states that "the Attorney General may not remove an alien to a country if the Attorney General decides that the alien's life or freedom would be threatened in that country because of the alien's race, religion, nationality, membership in a particular social group, or political opinion." To prevail on an application for withholding of removal the applicant must show a "clear probability" of persecution. *INS v. Stevic,* 467 U.S. 407, 104 S.Ct. 2489, 81 L.Ed.2d 321 (1984). A clear probability means "more likely than not." *Id.* at 429–30, 104 S.Ct. 2489.

Chen argues that the record supports a finding that it is more likely than not that he will be persecuted should he return to China because of China's population control program and its persecution of Falun Gong practitioners. Chen advances several factual assertions to support his fear of future persecution: (1) past persecution, namely his wife's forced abortion, (2) the birth of his second child, and (3) his practice of Falun Gong. The IJ rejected Chen's arguments and we must determine whether the IJ's determinations were supported by substantial evidence.

The IJ rejected Chen's contention that he would face persecution because of China's population control program. The IJ noted that Chen's wife's alleged forced abortion had already been litigated and rejected by the immigration court considering her asylum petition. (J.A. 153.)

Further, the IJ found that Chen would not face harm as a result of his second child because Chen testified that he would not bring the child to China should he return. Finally, the IJ relied on a 2004 State Department report, *China: Profile of Asylum Claims and Country Conditions,* which noted that forced abortions and sterilization are outlawed in China. (J.A. 36, 338.)

The IJ's conclusion that Chen would not face persecution because of China's birth control policy is grounded in the record, when viewed as a whole. It is based on substantial evidence and as such survives our deferential review.

■ The IJ also rejected Chen's argument that he would be persecuted as a result of his practice of Falun Gong, finding that this claim was not credible. The IJ reached this conclusion because Chen's knowledge of Falun Gong was very limited and he failed to produce corroborating evidence such as the Falun Gong literature he claimed to have and witnesses he claimed had seen him practice Falun Gong (such as his wife and a coworker). (J.A. 37; 97–100; 103–106.) Rather, Chen relied on his testimony alone to establish that he was a bona fide practitioner. (Petr.'s Br. 20–21.)

We have upheld BIA rules that require corroboration in instances where it is reasonable to expect such proof from a witness and there is no satisfactory explanation for its absence. *Abdulai v. Ashcroft,* 239 F.3d 542, 551–552 (3d Cir.2001); *Chen v. Gonzales,* 434 F.3d 212, 217–218 (3d Cir.2005). "The BIA's rule contemplates a three-part inquiry: (1) an identification of the facts for which 'it is reasonable to expect corroboration[';] (2) an inquiry as to whether the applicant has provided information corroborating the relevant facts; and, if he or she has not, (3) an analysis of whether the applicant has adequately explained his or her failure to do so." *Abdu-*

*lai,* 239 F.3d at 554 (citing *In re S–M–J–,* Interim Decision 3303 (BIA 1997), *available at* 1997 WL 80984).

The IJ determined that Chen's knowledge of Falun Gong was limited and therefore requested corroboration. Chen testified that several individuals had seen him practice Falun Gong and that he owned a Falun Gong book, yet he failed to produce witnesses or literature to corroborate his claim. Further, he provided no explanation for his failure to corroborate his claim. (J.A. 96–100.)

The IJ properly applied the three part analysis described in *Abdulai* and hence did not err in finding that Chen failed to carry his burden of proof with respect to his practice of Falun Gong. (J.A. 37.)

Having failed to show that he would be harmed because of China's birth control policy or persecution of Falun Gong practitioners, we find that the IJ did not err in denying Chen's application for withholding of removal.

### C. Convention Against Torture

The Convention's implementing regulations state that "[t]he burden of proof is on the applicant for withholding of removal under [the Convention] to establish that it is more likely than not that he or she would be tortured if removed to the proposed country of removal." 8 C.F.R. § 208.16(c)(2). The IJ must make an independent analysis of whether relief under the Convention is appropriate, "even where adverse credibility determinations have precluded relief under the [Immigration and Nationality Act]." *Tarrawally,* 338 F.3d at 188 (citations omitted).

In addition to the arguments Chen advanced to support his claim for withholding of removal, Chen asserts that his illegal exit from China weighs in favor of finding that he would be tortured should he be deported. (Petr.'s Br. 19.) This additional consideration is not enough to reverse

the IJ's determination that it is unlikely that Chen would face harm, let alone torture, should he return to China. Alternatively, Chen argues that the IJ's reasoning was so prejudiced by his adverse credibility finding that he failed to engage in independent analysis of the Convention claim. (Petr.'s Br. 19.) However, Chen alludes to nothing in the record to support this argument. As discussed above, the IJ's conclusion that Chen would not face harm should he return to China is supported by reasonable, substantial, and probative evidence, and we must uphold it.

### VI. Conclusion

For the foregoing reasons, the petition will be denied.